UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
NURSAN METALURJI ENDUSTRISI A.S.,            :       ECF CASE
                                             :
                        Plaintiff,           :       Case No.: 07 CIV 7687 (GBD)
                                             :
            -against-                        :
                                             :
M/V "TORM GERTRUD" her engines, tackle,      :
boilers, etc. *in rem*, M/V "NEW FLAME" her engines, :
tackle, boilers, etc. *in rem*,              :
A/S DAMPSKIBSSELSKABET TORM, TRANSMAR         :
SHIPPING CO. S.A., GLADIATOR NAVIGATION S.A., :
*in personam*,                               :
                                             :
                        Defendants.          :
------------------------------------------------------------------- X

### LOCAL CIVIL RULE 56.1 STATEMENT IN SUPPORT OF DEFENDANT A/S DAMPSKIBSSELSKABET TORM'S MOTION FOR PARTIAL SUMMARY JUDGMENT DECLARING THAT ITS LIABILITY, IF ANY, WILL BE DETERMINED UNDER THE 1910 COLLISION CONVENTION

Pursuant to Local Civil Rule 56.1, defendant A/S Dampskibsselskabet Torm ("Torm") contends that there is no genuine issue to be tried as to the following material facts:

1.  Plaintiff Nursan Metalurji Endustrisi A.S. is an alien corporation with a principal place of business in Hatay, Turkey. (Verified Complaint ¶ 2).

2.  Defendant Torm is a Danish corporation with its principal place of business in Hellerup, Denmark. (Verified Complaint ¶ 5).

3.  Torm is the owner of M/V TORM GERTRUD, a Danish-flagged product tanker. (Hansen Decl. ¶¶ 3 & 4).[1]

---

[1] The Declarations of Anne Mentz Hansen executed on December 6, 2007 (cited herein as "Hansen Decl."), James F. Sweeney executed on December 7, 2007 (cited herein as "Sweeney Decl."), and Julian Richard Triay executed on December 5, 2007 (cited herein as "Triay Decl.") were previously filed with the Court (*see* Docket Nos. 6-8) and, for the Court's convenience, are attached to the accompanying Declaration of Terry L. Stoltz executed on January 4, 2008 (cited herein as "Stoltz Decl.").

4. The M/V NEW FLAME is a Panamanian-flagged bulk carrier owned by Greek interests. (Verified Complaint ¶¶ 4, 6 & 7).

5. On July 31, 2007, the M/V NEW FLAME sailed from Claremont Terminal in Port Newark, New Jersey with a cargo of metal scrap bound for Turkey. (Sweeney Decl. Exh. C).

6. En route to Turkey, the M/V NEW FLAME made a port call in Gibraltar. (Triay Decl. Exh. A).

7. In the early morning hours of August 12, 2007, the M/V NEW FLAME sailed from Gibraltar. (Triay Decl. Exh. A).

8. Just off Europa Point, in the territorial waters of Gibraltar, the M/V NEW FLAME collided with the M/V TORM GERTRUD. (Verified Complaint ¶ 8).

9. The M/V TORM GERTRUD was outbound from Augusta, Italy with a full cargo of unleaded gasoline for delivery to the East Coast of the United States. (Hansen Decl. ¶ 9).

10. The M/V TORM GERTRUD's voyage charterer had preliminarily indicated that the port of discharge was to be Port Everglades, Florida. (Hansen Decl. ¶ 9).

11. At the time of the collision, the M/V TORM GERTRUD was nearing Algeciras, Spain to perform a crew change. (Hansen Decl. ¶ 9).

12. The movements of the M/V TORM GERTRUD and the M/V NEW FLAME were being tracked on radar by the UK Ministry of Defence Maritime Data Centre, Windmill Hill Signal Station located in Gibraltar. Real time records of those radar observations are maintained by that Maritime Data Centre. (Triay Decl. ¶ 6).

13.  As a result of the collision, the damaged M/V TORM GERTRUD proceeded to Algeciras where the voyage had to be abandoned and the cargo transshipped on another vessel owned by Torm. (Triay Decl. Exh. A).

14.  The M/V NEW FLAME partially sank in the territorial waters of Gibraltar and was abandoned by her crew, who were then taken to the Port of Gibraltar, where they were put ashore and medically examined. (Triay Decl. Exh. A).

15.  The Captain of the M/V NEW FLAME was arrested in Gibraltar and charged with a violation of Gibraltarian maritime law. If convicted, he could face a fine of £2,000 and/or two years in imprisonment. (Triay Decl. ¶ 7).

16.  The Gibraltar Port Authority immediately activated its Emergency Response Plan and dispatched all its available resources to the scene of the collision. The Gibraltar Port Authority deployed divers to the M/V NEW FLAME to inspect the damage to the submerged hull. (Triay Decl. Exh. A).

17.  A full on-board inspection was undertaken by the Gibraltar Port Authority Maritime Surveyors. (Triay Decl. Exh. A).

18.  The Gibraltar Maritime Administration commenced an investigation into the collision and into how the M/V NEW FLAME had departed from the Port of Gibraltar without the necessary clearance. (Triay Decl. Exh. A).

19.  The local Spanish maritime authorities also investigated the collision and deployed significant resources to the scene of the collision. (http://en.wikipedia.org/wiki/M/V_NEW_FLAME).

20. Panamanian and Danish investigations are also underway. The latter two are being jointly conducted with the Gibraltarian investigation with the Gibraltar Maritime Administration leading the joint investigation. (Triay Decl. Exh. B).

21. The report of the Gibraltar Maritime Administration's investigation is expected to be issued by March 2008. (Triay Decl. Exh. B).

22. Pursuant to the joint investigation, the crews of both the M/V NEW FLAME and the M/V TORM GERTRUD were questioned and interviewed by the Gibraltar Maritime Administration. (Triay Decl. ¶ 9).

23. Various officers and crew of the M/V NEW FLAME were also interviewed by The Royal Gibraltar Police. (Triay Decl. ¶ 9).

24. Salvage and recovery efforts were jointly conducted by Greek and Dutch marine salvage contractors. The aim was to remove the scrap steel from the wreck of the M/V NEW FLAME and land it ashore in Gibraltar for ultimate transshipment to Turkey. (Sweeney Decl. Exhs. A and B).

25. The wreck of the M/V NEW FLAME has broken in two, resulting in minor oil pollution in the territorial waters of Gibraltar. (Stoltz Decl. Exh. D).

26. There is no United States involvement or investigation into the collision.

Dated: New York, New York
       January 4, 2008

                              Respectfully submitted,

                              NICOLETTI HORNIG & SWEENEY
                              *Attorneys for Defendant*
                              *A/S DAMPSKIBSSELSKABET TORM*

By: /s/ Terry L. Stoltz
      Terry L. Stoltz (TS-7650)
      Wall Street Plaza
      88 Pine Street, 7th Floor
      New York, New York 10005-1801
      Telephone No.: (212) 220-3830
      Facsimile No.: (212) 220-3784
      E-mail: tstoltz@nicolettihornig.com
      File No.: 00000798 (JFS/TLS)

**TO:**

Patrick F. Lennon, Esq.
Charles E. Murphy, Esq.
LENNON, MURPHY & LENNON, LLC
*Attorneys for Plaintiff*
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone No.: (212) 490-6050
Facsimile No.: (212) 490-6070
E-mail: pfl@lenmur.com; cem@lenmur.com

Peter J. Gutowski, Esq.
Gina M. Venezia, Esq.
FREEHILL HOGAN AND MAHAR LLP
*Attorneys for Gladiator Navigation S.A.*
80 Pine Street
New York, N.Y. 10005-1759
Telephone No.: 212-425-1900
Facsimile No.: 212-425-1901
E-mail: gutowski@freehill.com; venezia@freehill.com