UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NURSAN METALURJI ENDUSTRISI A.S.,            :

                                    Plaintiff,    :        07 CIV 7687 (GBD)

                                              :        ECF CASE

       - against -                            :

                                              :
M/V "TORM GERTRUD" her engines, tackle, boilers,    :
etc. in rem,  M/V "NEW FLAME" her engines, tackle,   :
boilers, etc. in rem, A/S DAMPSKIBSSELSKABET    :
TORM, TRANSMAR SHIPPING CO. S.A.,             :
GLADIATOR NAVIGATION S.A., in personam,       :

                                              :
                                    Defendants.   :
-------------------------------------------------------------------X


# PLAINTIFF'S MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT TORM'S
# MOTION TO DISMISS


*Of counsel:*

Patrick F. Lennon
Charles E. Murphy
Coleen A. McEvoy
Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050
(212) 490-6070 fax

TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

FACTS...............................................................................................................1

ARGUMENT

POINT I

TORM IS SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT ....................3

   A.  Torm maintains extensive contacts with New York...........................................3
       1.  N.Y. CPLR section 302 provides a statutory basis for the Court's
          exercise of personal jurisdiction over Torm .........................................................3
       2.  The exercise of personal jurisdiction over Torm comports
          with the federal guarantee of due process.................................................................8

   B.  Alternatively, Torm maintains sufficient contacts with the United States generally to
      justify the exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2)....10

POINT II

TORM'S FORUM NON CONVENIENS MOTION SHOULD BE DENIED
BECAUSE THE SOUTHERN DISTRICT OF NEW YORK IS THE MOST CONVENIENT
FORUM FOR ALL PARTIES TO THIS DISPUTE..................................................................12

   A.  Co-defendants Transmar and Gladiator are contractually obliged to submit to
      jurisdiction in New York in relation to this dispute – accordingly, New York is
      the most convenient forum because it is the only one where all the parties can
      be joined in one proceeding....................................................................12

   B.  Plaintiff's choice of forum is entitled to a great degree of deference............................13

   C.  Consideration of the *Gilbert* Factors mandates denial of the motion to dismiss..............17
       1.  The private interest analysis.......................................................................19
       2.  The public interest analysis...........................................................................21

CONCLUSION.......................................................................................................23

## INTRODUCTION

Plaintiff, Nursan Metalurji Endustrisi A.S. (hereinafter "Nursan" or "Plaintiff") submits the within Memorandum of Law in opposition to Defendant A/S Dampskibsselskabet Torm's Motion to Dismiss dated December 10, 2007.  For the reasons set forth herein, the Motion to Dismiss must be denied.

## FACTS

Plaintiff Nursan entered into a Sales Contract with Sims Group Global Trade Corporation ("Sims") for the sale and purchase of a consignment of scrap metal.  The Sales Contract provides for disputes arising between the parties to be resolved exclusively in New York.  *See accompanying Attorney Affidavit of Patrick F. Lennon ¶¶ 2-3 (hereinafter "Lennon Aff.")*.

At all material times, the M/V NEW FLAME was under a time charter between the owners of the vessel, Defendant Gladiator Navigation S.A. and the charterer, E,D&F Man.  The vessel was, in turn, sub-chartered by E,D&F Man to Sims.  *Lennon Aff. ¶ 4.*

A "clean on board" Bill of Lading dated July 31, 2007 was issued by New England Shipping Co. (the ship's agent) on behalf of the Master and the Owner of the Vessel, Gladiator Navigation S.A., to Sims Group Global Trade Corporation to Nursan at the Port of New York.  *Lennon Aff. ¶ 5.*

The Bill of Lading incorporates by reference the terms and conditions set forth in the E,D&F Man / Sims charter party, including the law and jurisdiction clauses therein, and thus is subject to the U.S. Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. 1300, *et seq.,* by operation of law and contract.  Accordingly, Plaintiff is required to bring claims arising out of the carriage of the steel and the loss or damage to the cargo in the U.S.  *Lennon Aff. ¶ 6.*

1

After the scrap metal cargo was loaded at the Port of New York, the M/V NEW FLAME was steaming toward Turkey, for intended discharge at the port of Iskenderun, Turkey. The M/V TORM GERTRUD, owned and operated by the Defendant, A/S Damskibselskabbet Torm, was steaming from Europe to the East Coast of the United States. On or about August 13, 2007, the M/V TORM GERTRUD and the M/V NEW FLAME collided in the vicinity of Gibraltar. *Lennon Aff. ¶ 7.*

The collision between the M/V TORM GERTRUD and the M/V NEW FLAME resulted in the serious damage to the M/V NEW FLAME. Eventually, the, Defendants Gladiator Navigation S.A. and, Transmar Shipping Co. S.A., the owner and manager, respectively, of the M/V NEW FLAME, were forced to abandon the voyage. As a result of the collision, four of the five holds of the M/V NEW FLAME were flooded such that plaintiff's scrap steel cargo contained therein was lost or damaged. *Lennon Aff. ¶ 8.*

As a further result of the collision, Plaintiff's cargo carried in the holds of the M/V NEW FLAME has not been delivered. As a still further result of the collision, Plaintiff will face claims in salvage for recovery of the cargo by salvors. *Lennon Aff. ¶ 9.* The Gibraltar government has recently announced that a United States company, Titan Salvage, will carry out the wreck removal operation. *See accompanying Affidavit of Keith Azopardi ¶ 23 (hereinafter Azopardi Aff.").*

This action was commenced on August 29, 2007. Thereafter, Defendant Torm proceeded to commence *an in rem* action in the Gibraltar courts against Plaintiff's cargo. *Azopardi Aff. ¶ 4.* After Torm filed the instant Motion to Dismiss, the Gibraltar court dismissed Torm's *in rem* action as improperly plead against Plaintiff. *Azopardi Aff. ¶ 12.* Thus, at present, and completely contrary to the allegations set forth in Torm's motion papers, there is no pending

2

action in Gibraltar to which Plaintiff Nursan is a party. *Azopardi Aff.* ¶¶ *4-15.* It is noteworthy that Torm also sought in Gibraltar an anti-suit injunction against Nursan, which also was dismissed with its *in rem* action. *Azopardi Aff.* ¶ *13.*

## ARGUMENT

### POINT I

### TORM IS SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT

#### A.    Torm maintains extensive contacts with New York

In an admiralty action, personal jurisdiction is governed by the law of the forum state. *See Klinghoffer v. S.N.C. Acchille Lauro Ed Altri Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 937 F.2d 44 (2d Cir. 1991). In determining whether personal jurisdiction exists, the court follows a two-step procedure. First, the court determines whether a statutory basis for personal jurisdiction exists under the law of the forum. Second, if this statutory basis exists, the court determines whether the exercise of personal jurisdiction comports with the federal guarantee of due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A plaintiff need make only a *prima facie* showing of jurisdiction. *Id.* See also *Alexander & Alexander v. Donald F. Muldoon & Co.,* 685 F. Supp. 346, 352 (S.D.N.Y. 1988). All pleadings and affidavits must be construed in the light most favorable to plaintiff and all doubts resolved in its favor. *Id.; Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

#### 1.    N.Y. CPLR section 302 provides a statutory basis for the Court's exercise of personal jurisdiction over Torm

New York Civil Practice Law and Rules ("CPLR") section 301 *et seq.* permits the general exercise of personal jurisdiction over a foreign corporation "doing business" in New

York if the corporation is "present in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Landoil Res. Corp. v. Alexander& Alexander Servs., Inc.*, 918 F. 2d 1039 at 1043 (2d Cir. 1990), *Laufer v. Ostrow*, 55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (N.Y. 1982)  See *McGowan v. Smith*, 52 N.Y. 2d 268, 419 N. E. 2d 323, 437 N.Y.S. 2d 643 (N.Y. 1981) No single factor is dispositive. *Schenker v. Assicurazioni Generali S.P.A. Consol.*, No. 98 Civ. 9186, 2002 U.S. Dist. LEXIS 12845, 2002 WL 1560788, at *2 (S.D.N.Y. July 15, 2002). Under Section 301, an entity is amenable to jurisdiction in New York if it is "doing business" in New York so as to establish its presence in the state. *Ball v. Metallurgie Hoboken -- Overpelt, S.A.,* 902 F.2d 194, 198 (2d Cir. 1990); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 58 (2d Cir. 1985).  A foreign corporation is said to be "doing business" in New York if it engages in a continuous and systematic course of conduct in New York. *Laufer v. Ostrow,* 55 N.Y.2d at 309-10.  *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 536, 227 N.E.2d 851, 853, 281 N.Y.S.2d 41, 43, *cert. denied,* 389 U.S. 923, 19 L. Ed. 2d 266, 88 S. Ct. 241 (1967).

New York courts have generally focused on the following factors as indicia of "permanence and continuity:"

- the existence of an office in New York;
- the solicitation of business in New York;
- the presence of bank accounts or other property in New York; and
- the presence of employees or agents in New York.

*Id.*; *See also Stutts v. DeDietrich Group*, 465 F. Supp. 2d 156, 161 (E.D.N.Y. 2006).  Plaintiff's cause of action need not be related to defendant's New York activities for this provision to apply. The test is pragmatic and necessarily fact-sensitive. *Landoil,* 918 F.2d at 1043.

4

Defendant Torm's activities clearly demonstrate that it does business in New York with "a fair measure of permanence and continuity." First, Torm is listed and publicly traded on NASDAQ, which is located in New York City. *See Lennon Aff. ¶ 10(a), Exhibit "4."* Consequently, Torm attends meetings, conducts business and solicits business in New York. "[A] listing can be considered as evidence in conjunction with other indicia of doing business in the jurisdiction." *Wiwa v. Royal Dutch Petroleum Co.,* 226 F. 3d 88, 97 (2d Cir. 2000).

Secondly, Torm has acquired a controlling interest in the non-party OMI Corp., which has further increased Torm's presence in the United States, specifically in New York. *Lennon Aff. ¶ 10(d), Exhibit "7."* The acquisition of OMI by Torm took place in New York. *Id.* On its website, Torm's New York attorneys, White & Case, LLP state: "In addition to giving TORM a very modern and uniformed product tanker fleet, the transaction will ensure TORM's presence in the American market. . . ." *Id.*

Third, in conjunction with its acquisition of OMI, Torm has appointed Allen & Caron as its corporate communications investor relations and media relations agent for North America. *Lennon Aff. ¶ 10(g), Exhibit "10."* According to the PRNewswire dated June 9, 2007, Torm's CEO Klaus Kjaerulff states: "We intend to expand our communications with the US investment audience significantly over the coming months." *Id.* The contact for Allen & Caron for investors is listed at a 212 area code telephone number, which is the area code for New York. *Id.*

A New York representative of a non-resident defendant need not be an official agent for its activities to subject the defendant to personal jurisdiction in New York. *Gelfand v. Tanner Motor Tours Ltd.,* 385 F.2d 116 (2d Cir. 1964) (non-resident defendant "doing business" under § 301 through activities of independent contractor in New York). An analysis of the facts of *Gelfand* and *Frummer v. Hilton Hotels* shows that the activities of a New York representative

may be attributed to a non-resident defendant if the representative acts with the defendant's authority and for its substantial benefit. *See Gelfand* and *Frummer,* supra. As long as services which would otherwise have to be performed by defendant itself are performed with defendant's authority and for its substantial benefit by a representative in New York, the representative's activities may be attributed to defendant for the purpose of personal jurisdiction. *Tuxxedo Network Inc. v. Hughes Communications Carrier Services, Inc.,* 753 F. Supp. 514 (S.D.N.Y. 1990) (non-resident defendant "doing business" under § 301 through activities of affiliated corporation in New York). Personal jurisdiction was upheld where the plaintiff made a *prima facie* showing that the systematic financial activities of an agent in New York on behalf of defendant were carried out with the defendant's authority and for its substantial benefit. The activities were sufficiently important to defendant that if it had not had its agent to perform them, its own officials would have had to perform substantially similar services. See *Gelfand*, 385 F.2d 116 (2d Cir. 1964), *supra*. Here, Torm has appointed Allen & Caron as its agents and they are soliciting business in New York. Its activities are being carried out for Torm's substantial benefit. *Lennon Aff. ¶ 10(g), Exhibit "10."*

Fourth, a recent search of the website of the marine classification society, Det Norske Veritas ("DNV Exchange") revealed 19 vessels owned by Torm and 27 vessels operated by Torm. *Lennon Aff. ¶ 10(e), Exhibit "8."* Additionally, according to Torm's website in its Announcement No. 19-2007, as a result of its acquisition of OMI, effective August 1, 2007, Torm's fleet is 85 vessels, excluding newbuilding projects. *Id.* It is likely that several, if not the majority, of these vessels have made calls in the port of New York over the last year.

Torm contends that the "Port of New York" is a commercial fiction and misnomer. However, it has long been established that the Southern District of New York has jurisdiction

6

over vessels docked in the Port of New York, even if such vessels are tied to a dock in New

Jersey. See e.g. *The L.W. Eaton*, 15 F.Cas. 1119 (S.D.N.Y. 1878). At a minimum, Torm's

vessels calling at the Port of New York in New Jersey necessarily transited New York Southern

District waters to arrive at New Jersey and took advantage of New York port facilities while in

New Jersey. Thus, despite Torm's attempt to sidestep the issue, it is clear that Torm's vessels

have, over an extended period of time, continuously and systematically transited New York

waters, and thus conducted business in New York, for Torm's commercial gain.

The decision in *Ivanhoe Trading Co. v. M/S Bornholm,* 160 F. Supp. 900 (S.D.N.Y.

1957) is instructive. In *Ivanhoe*, a subcharterer sued a ship's owner and its time charterer for

loss of cargo, although the time charterer made all decisions about the ship's activities. To a

large extent, the accomplishment of the owner's obligations and the enjoyment of its benefits

were effected in New York through its subcharterer. The court held "such activity substantial

and continuous enough to support the finding that the owner is present in New York." *Id.* at 902.

Torm contends it does not control the whereabouts of the vessels it owns and/or operates.

Nevertheless, it is gaining substantial benefits from the ships' presence in the Port of New York.

Moreover, Torm has only provided a very carefully word description of its activities in New

York, all of which is limited to the prior 12 month period. It is clear, however, that Torm has a

very long history of business dealings in the United States generally, and particularly within the

State of New York. To the extent the Court is not otherwise convinced that Torm is subject to

personal jurisdiction on the basis of the record now before it, there is little doubt that

jurisdictional discovery would further amplify Torm's significant jurisdictional nexus to the

State of New York. In sum, Torm has clearly availed itself of the privileges and benefits of its

carrying on business within New York and has clearly earned income from the presence of its

7

ships here, not to mention the trading of its shares on the NASDAQ stock exchange.

Accordingly, Torm's jurisdictional protests ring hollow.

Fifth, a recent search of the Southern District of New York docket shows Torm as a party in 21 cases (a plaintiff in 5 cases and a defendant in 16 cases). . *Lennon Aff. ¶ 10(c), Exhibit "6."* While suing or being sued in the Southern District of New York does not confer jurisdiction, it is noteworthy that it appears Torm did not contest jurisdiction in any of the cases it defended, nor did it contest jurisdiction in a case currently pending against it in the District of Connecticut. *See Lennon Aff. ¶ 10(f), Exhibit "9."*

Taken collectively, the foregoing facts show that Torm's contacts with New York are permanent and continuous. Furthermore, Torm has purposefully availed itself of the benefits and protections of the laws of the State of New York. Its ships visit the Port of New York, its shares are traded on the NASDAQ stock exchange, and all public relations and press releases indicate that Torm is not only doing business here but also wishes to increase its presence in New York. Torm's jurisdictional defense thus lacks credibility.

### 2. The exercise of personal jurisdiction over Torm comports with the federal guarantee of due process

A state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). The defendant's contacts with the forum state must be such that maintenance of the suit does not offend traditional notions of fair play and substantial justice, *id., at 316,* and the relationship between the defendant and the forum must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there . . . ." *Id.* at 317. Requiring

Torm to defend this suit in New York comports with "traditional notions of fair play and substantial justice."

Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including:

- the forum State's interest in adjudicating the dispute. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223 (1957);

- the plaintiff's interest in obtaining convenient and effective relief, see *Kulko* v. *Superior Court of California,* 436 U.S. 84 (1978);

- at least when that interest is not adequately protected by the plaintiff's power to choose the forum, *cf. Shaffer v. Heitner,* 433 U.S. 186, 211, n. 37 (1977); and

- the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies, see *Kulko,* 436 U.S. at 93, 98.

The Due Process Clause ensures not only fairness, but also the "orderly administration of the laws." *International Shoe* at 319. "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253 (1958), it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the State." *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Torm's conduct in and connection to New York should reasonably lead it to anticipate being haled into court here. See *Kulko v. California Superior Court,* 436 U.S. at 97-98; *Shaffer v. Heitner,* 433 U.S. at 216. Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson v. Denckla*, 357 U.S. at 246 . This determination is one in which few answers will be written "in black and white. The grays are dominant and even among them the shades are innumerable." *Estin v. Estin,* 334 U.S. 541, 545 (1948); *Kulko,* 436 U.S. at 92.

For the reasons set forth above, Torm's connections to, and activities in New York should reasonably have led it to anticipate that it would be haled into court here. It has purposely availed itself of its listing on NASDAQ, utilizing the Port of New York, appointing a corporate communications investor relations and media relations agent in New York and acquiring ownership of OMI Corp., all of which was done in New York. Therefore, the exercise of this Court's jurisdiction over Torm adheres to the federal guarantee of due process.

**B.** **Alternatively, Torm maintains sufficient contacts with the United States generally to justify the exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2)**

Rule 4 (k)(2) extends personal jurisdiction over foreign defendants for claims arising under federal law if that person is not subject to personal jurisdiction in any state but has sufficient contacts with the nation as a whole to justify the imposition of the laws of the United States. *See World Tanker Carriers Corp. v. M/V YA MAWLAYA,* 99 F.3d 717 (5th Cir. 1996); 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1069 (Supp. 1996).

Admiralty and maritime claims are subject to Rule 4(k)(2) because they are widely considered as arising under federal law except for limited circumstances. *See, e.g., Yamaha Motor Corp. v. Calhoun,* 133 L. Ed. 2d 578, 116 S. Ct. 619, 626 n. 8 (1996) (referring to "the federal cast" of admiralty law); *Sosebee v. Rath,* 893 F.2d 54, 56 (3d Cir. 1990); *Youell v. Exxon Corp.,* 74 F.3d 373, 376 (2d Cir. 1996). "In order to determine whether a non-resident defendant has transacted business sufficient to allow exercise of jurisdiction under the federal long-arm statute, a court must first determine whether the defendant has engaged in purposeful activity in the United States, thus invoking the benefits and protection of United States' law." *Western Equities v. Hanseatic, Ltd.,* 956 F. Supp. 1232, 1237 (D.V.I. 1997); See also *United Trading Co., S.A., v. M/V Sakura Reefer,* 1996 U.S. Dist. LEXIS 9190, 1996 WL 374154 at *4 (S.D.N.Y. 1996).

Torm admits its contacts with New Jersey and Florida and maintains an office in Connecticut, according to its website. *Lennon Aff. ¶ 10(b), Exhibit 2* . Its ships sail in and out of U.S. ports on a frequent and regular basis  It is listed on NASDAQ stock exchange, has appointed an agent in New York, and transacts business here. Furthermore, it has acquired OMI Corp., with a closing in New York and has manifested an intent to increase its presence in the U.S. These facts standing alone clearly confer personal jurisdiction over Torm under Rule 4(k)(2). As stated above, this information was unearthed without the aid of jurisdictional discovery. Should the Court have any remaining doubt, jurisdictional discovery would quickly dispatch such doubt.

## POINT II

### TORM'S *FORUM NON CONVENIENS* MOTION SHOULD BE DENIED BECAUSE THE SOUTHERN DISTRICT OF NEW YORK IS THE MOST CONVENIENT FORUM FOR ALL PARTIES TO THIS DISPUTE

**A.    Co-defendants Transmar and Gladiator are contractually obliged to submit to jurisdiction in New York in relation to this dispute – accordingly, New York is the most convenient forum because it is the only one where all the parties can be joined in one proceeding**

Paragraph 13 of the Sales Contract between Plaintiff, Nursan, and Sims Group, the

charterer of the M/V NEW FLAME states:

> JURISDICTION: The Competent courts under the laws applicable in the State of New York, USA alone shall have the exclusive jurisdiction to decide all matters, disputes and controversies relating to this contract, including arbitration proceedings instituted or to be instituted pursuant to Clause 11 hereof. This contract is deemed to have been entered into in New York City, New York, USA.

*Lennon Aff. Exhibit "1."*

Similarly, Clause 37 of the Charter Party dated July 11, 2007, between E,D&F Man

Shipping Ltd., disponent owner of the M/V NEW FLAME and Sims Group Global Trade Corp.,

Charterer, states:

> Any and all disputes of every description arising under this Charter which cannot be resolved by the parties and which shall not by this agreement have been referred to arbitration shall be reserved by action brought in the U.S. District Court for the southern district of New York , to the admiralty jurisdiction of which court the parties submit themselves.

*Lennon Aff. Exhibit "2."*

The Bill of Lading covering the carriage of Plaintiff's steel cargo on board the M/V NEW

FLAME at the time of the collision between the NEW FLAME and the TORM GERTRUD

incorporates by reference the terms and conditions set forth in the E,D&F Man / Sims charter

party, and thus and is subject to the U.S. Carriage of Goods by Sea Act ("COGSA") by

operation of law and contract. Accordingly, Plaintiff is required to bring claims arising out of

the carriage of the steel and the loss or damage to the cargo in the U.S. *See Lennon Aff. Exhibit*
*"3."*

Torm's codefendants, Transmar and Gladiator, cannot seek dismissal of this action in this

forum because they are contractually bound to submit disputes under the governing Bill of

Lading to the jurisdiction of this court. Thus, there is little question but that Plaintiff's claims

against them will proceed in this action regardless of the Court's decision on Torm's Motion to

Dismiss. Courts routinely uphold the validity of forum selection clauses in charter parties,

contracts and bills of lading. *See e.g. In re: Maritima Aragua S.A.,* 823 F. Supp. 143 (S.D.N.Y.

1993). "A forum selection clause is enforceable unless it is shown that to enforce it would be

'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it."

*New Moon Shipping Co. v. MAN B & W Diesel AG,* No. 96-7289, 304, 1997 WL 375225, at *5

(2d Cir. June 18, 1997); *see also M/S Bremen,* 407 U.S. at 15.

Thus, because Torm's Motion to Dismiss creates the unwarranted possibility of

piecemeal litigation of the claims arising from the collision between the NEW FLAME and the

TORM GERTRUD, it must be denied as this is the only forum where all parties and claims can

be joined and adjudicated in one proceeding.

**B.     Plaintiff's choice of forum is entitled to a great degree of deference**

The United States Supreme Court has established certain general propositions about

*forum non conveniens*. "Unless the balance is strongly in favor of the defendant, the plaintiff's

choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 91 L.

Ed. 1055, 67 S. Ct. 839 (1947). Consequently, a court reviewing a motion to dismiss for *forum*

*non conveniens* should begin with the assumption that the plaintiff's choice of forum should

stand unless the defendant meets the burden of demonstrating that the plaintiff's choice of forum

will be unnecessarily burdensome. "If the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 n.23, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

The degree of deference given to a plaintiff's forum choice varies with the circumstances. Plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in its home forum. *Koster v. (Am.) Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947); *see also Piper,* 454 U.S. at 255-56, 256 n.23. Conversely, the choice of a United States forum by a foreign plaintiff is entitled to less deference. *Piper,* 454 U.S. at 255-56.

However, in this case, the forum selection clauses in the Charter Party and Bill of Lading are controlling and Turkey (the home forum of Nursan) is not a convenient forum for any party. The degree of deference to be given to a plaintiff's choice of forum moves on a "sliding scale" depending on several relevant considerations. *Pollux Holdings Ltd. v. The Chase Manhattan Bank,* 329 F.3d 64 (2d Cir. 2003).

"The more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice. Stated differently, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri v. United Technologies Corp.,* 274 F.3d 65, 71-72 (2d Cir. 2001).

In this case, the forum selection clauses in the E,D&F Man / Sims Charter Party, the Sims / Nursan Sales Contract and the governing Bill of Lading have dictated Plaintiff's choice of

forum. Forum selection clauses are certainly "reasons the law recognizes as valid." An enforceable forum selection clause amounts to consent to personal jurisdiction. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1280 (7th Cir. 1997); *Menorah Ins. Co. v. INX Reinsurance Corp.,* 72 F.3d 218, 222 n.6 (1st Cir. 1995*)* ("In the commercial context a forum selection clause, even one for arbitration, confers personal jurisdiction on the courts of the chosen forum."). "It is well-settled that jurisdiction by consent satisfies constitutional principles of due process . . . ." *National Union Fire Ins. Co. v. Fanelli*, Nos. 89 Civ. 8348, 8400, 1990 WL 134895, at *3 (S.D.N.Y. Sept. 11, 1990) (citing *National Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 11 L. Ed. 2d 354, 84 S. Ct. 411 (1964)).

"[F]actors that argue against *forum non conveniens* dismissal include the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense. On the other hand, the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons -- such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum -- the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts." *Iragorri,* 274 F.3d at 72. Here, the foregoing discussion of the binding New York forum selection clauses in the relevant contracts

renders moot Torm's argument that Plaintiff is "forum shopping." To the contrary, even though Plaintiff is a foreign party, and may arguably obtain a "better result" in the United States than elsewhere, these facts become irrelevant to the *forum non conveniens* issue once consideration is taken of the contractual forum selection clauses that left Plaintiff with no convenient alternative but to pursue its claims in this Court. Thus, Plaintiff's choice of forum is entitled to a greater degree of deference.

"As is implicit in the meaning of 'deference,' the greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing *forum non conveniens* dismissal. At the same time, a lesser degree of deference to the plaintiff's choice bolsters the defendant's case but does not guarantee dismissal. A defendant does not carry the day simply by showing the existence of an adequate alternative forum. The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri,* 274 F.3d at 74-75. In this case, the most that can be said of Torm's motion is that it makes a case for the convenience of Gibraltar as an adequate alternative forum. Torm's motion does not, however, get very far in carrying its burden of showing this forum is *inconvenient.* Rather, as set forth above, when all the facts and circumstances are taken together, it is clear that there are compelling reasons why Plaintiff's choice of forum should not be disturbed, and especially because dismissing Plaintiff's claim against Torm will create piecemeal resolution of the claims arising from the collision incident. Thus, even if Gibraltar could be considered an "adequate alternative forum," it is not significantly preferable to New York as a forum for total resolution of the claims arising from the collision.

**C.    Consideration of the *Gilbert* Factors mandates denial of the motion to dismiss**

After a court has determined the degree of deference owed to Plaintiff's choice of forum,

a district court still must conduct the analysis set out in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501,

91 L. Ed. 1055, 67 S. Ct. 839 (1947). *See Iragorri,* 274 F.3d at 73 . The *Gilbert* standard, as

reaffirmed in *Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880 (2d Cir. 1978) .is the proper one

for determining motions to dismiss on the ground of forum non conveniens, including those in

admiralty actions. *Alcoa S.S. Co. v. M/V Nordic Regent,* 654 F.2d 147, 159 (2d Cir. 1980)

"After determining the degree of deference owed to a plaintiff's choice of forum, a

district court engages in a two-step inquiry.  First, the court must consider whether an adequate

alternative forum exists.  If so, it must "then balance a series of factors involving the private

interests of the parties in maintaining the litigation in the competing fora and any public interests

at stake." Defendant must next establish that the balance of private and public interest factors

"tilts strongly in favor of trial in the foreign forum." *Wiwa v. Royal Dutch Petroleum Co,* 226

F.3d 88, 100 (2d Cir. 2000).; *see also Iragorri,* 274 F.3d at 73.  The defendant seeking dismissal

bears the burden as to both questions. *Wiwa,* 226 F.3d at 100; *Aguinda v. Texaco,* 303 F.3d 470

(2d Cir. 2002).

Here, Torm proposes Gibraltar as an adequate alternative forum.  Due to the forum

selection clauses in the Charter Party, Sales Contract and the governing Bill of Lading, however,

as well as the status of the matter in the Gibraltar litigation and the reasons set forth below,

Gibraltar is not significantly preferable or more convenient than New York as a forum in which

to try this action.  In fact, unlike Gibraltar, this is the only forum where all claims arising from

the collision incident can be resolved in one proceeding.

Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also sometimes move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping considerations.   Courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preference for the foreign forum. The greater the degree to which the plaintiff has chosen a forum where the defendant's witnesses and evidence are to be found, the harder it should be for the defendant to demonstrate inconvenience. *Irragori*, 274 F.3d at 75.  In this case, Plaintiff has chosen a forum where witnesses and evidence will be located as a result of the obligations of defendants Gladiator and Transmar to submit to jurisdiction here.

*Gilbert* requires courts deciding *forum non conveniens* motions to consider so-called "private interest factors." These include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.  There may also be questions as to the enforceability of a judgment if one is obtained.  The court will weigh relative advantages and obstacles to fair trial.  It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.  But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508.

*Gilbert* also requires consideration of so-called "public interest factors."   The public interest factors include consideration of the administrative difficulties "for courts when litigation

18

is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert,* 330 U.S. at 508-09.

### 1.    The private interest analysis

Private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508.

In *Seguridad de Centro America S.A. v. M/V Global Mariner*, 2002 U.S. Dist. LEXIS 6108 (S.D.N.Y. 2002), although plaintiffs and defendants were all foreign, and, although no witnesses or other evidence relevant to the trial had any connection to the district, the court denied defendant's motion to dismiss for *forum non conveniens*. In fact similar to the instant case, the court found that the witnesses were scattered around the world and on the high seas and that there was no single truly convenient place. Further, the court found the dispute was private, there was no apparent interest of the citizens of the locality where the collision took place, and that the court was capable of applying foreign law, if necessary.

19

In this case, Torm will have access to sources of proof due to the presence of co-defendants that are parties to this action, but that will not be parties to any action in Gibraltar. The witnesses are scattered. They are not presently in Gibraltar, contrary to the misimpression created by Torm's motion papers. *See Azopardi Aff. ¶¶ 19-23*. Thus, the most practical consideration is the presence of co-defendants, which will cause witnesses and documentation to be in this jurisdiction, thereby increasing convenience for all parties.

Plaintiffs should not be deprived of their choice of forum except upon defendant's clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience. See *e.g. Williams v. Green Bay & W.R. Co.*, 326 U.S. 549 (1946)

Here, Torm has failed to even discuss how a trial in the U.S. would be "oppressive" or "vexatious." Modern technology has made it more convenient to move documents and evidence than ever before. To the extent documents exist elsewhere, advances in transportation and communication accord this issue less weight. See *Allstate Life Insurance Co. v. Linter Group Ltd.*, 782 F. Supp. 215, 225 (S.D.N.Y. 1992), *aff'd*, 994 F.2d 996 (2d. Cir. 1993*); Itoba Ltd. v. LEP Group PLC,* 930 F. Supp. 36, 44 (D. Conn. 1996).

Furthermore, despite the preference for live testimony, courts have recognized the availability of letters rogatory as relevant in deciding whether plaintiffs' chosen forum is inconvenient. See, e.g., *Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt,* 684 F.2d 232, 235 (2d Cir. 1982) (noting that "any difficulties . . . regarding witnesses whose attendance the Court is unable to compel can most likely be resolved by the use of deposition testimony or letters rogatory"); see also *In re Livent, Inc. Sec. Litig.,* 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999). While demeanor evidence is important when trying a fraud case

before a jury, this case does not involve a jury and videotaped depositions, obtained through letters rogatory, could afford the court an opportunity to assess the credibility of witnesses should it become necessary to use such devices. *See Howe v. Goldcorp Invs., Ltd.,* 946 F.2d 944, 952 (1st Cir. 1991).

The balance of the private interest factors favor of Plaintiff's choice of forum. *Gilbert* makes clear that unless the balance strongly favors defendant, plaintiffs' choice of forum "should rarely be disturbed." *Gilbert,* 330 U.S. at 508.

### 2.    The public interest analysis

Public interest considerations include administrative difficulties associated with court congestion; the unfairness of imposing jury duty on a community with no relation to the litigation; the interest in having localized controversies decided at home; and avoiding difficult problems in conflict of laws and the application of foreign law. *Gilbert,* 330 U.S. at 508-09.

In this case, there is no right to trial by jury and the fact that the collision occurred in the waters off Gibraltar does not make it a local controversy. The Southern District of New York has heard and decided numerous actions which involve conflict of laws and the application of foreign law, especially in admiralty cases involving collisions on the high seas. This Court is capable of applying that law, and, in fact, is frequently called upon to do so in the exercise of its admiralty jurisdiction. *Seguridad,* 2002 U.S. Dist. LEXIS 6108 at 19. See also *In re Maritima Aragua S.A.,* 823 F. Supp. 143 (S.D.N.Y.1993)

Torm argues that the application of the 1910 Collision Convention versus the "innocent cargo" rule should be a factor in its *forum non conveniens* claim. Not so. With respect to the need to apply foreign law, the court in *Piper* stated: "The possibility of a change in substantive

21

law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper,* 454 U.S. at 245.

The need to apply foreign law is not alone sufficient to dismiss under the doctrine of *forum non conveniens, R. Maganlal & Co. v. M.G. Chemical Co.,* 942 F.2d 164, 169 (2d Cir. 1991). "We must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu Int'l. S.A. v. Avon Products, Inc.,* 641 F.2d 62, 67-68 (2d Cir. 1981); *Cruz v. Maritime Co. of the Philippines,* 702 F.2d 47, 48 (2d Cir. 1983).

In any event, the choice of law factor alone is not sufficient to warrant dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is appropriate. See, *e. g., Founding Church of Scientology v. Verlag,* 536 F.2d at 436; *Burt v. Isthmus Development Co.,* 218 F.2d 353, 357 (5th Cir.), *cert. denied,* 349 U.S. 922 (1955).

"[I]f conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper . . . . In holding that the possibility of a change in law unfavorable to the plaintiff should not be given substantial weight, we also necessarily hold that the possibility of a change in law favorable to defendant should not be considered." *Piper,* 454 U.S. 235, *cf. Kloeckner Reederei und Kohlenhandel v. A/S Hakedal,* 210 F.2d 754, 757 (2d Cir. 1954) (defendant not entitled to dismissal on grounds of *forum non conveniens* solely because the law of the original forum is

less favorable to him than the law of the alternative forum), *cert. dism'd by stipulation,* 348 U.S. 801 (1954).

Accordingly, Torm's reliance on the 1910 Collision Convention, as it contends would apply under Gibraltar law, does not support its motion to dismiss on *forum non conveniens* grounds.

## CONCLUSION

For all of the foregoing reasons, it is indisputable that Defendant A/S Dampskibsselskabet Torm is subject to the personal jurisdiction of this Court, and with the aid of discovery the motion to dismiss on jurisdictional grounds would be exposed as a sham. Likewise, the motion to dismiss on the basis of *forum non conveniens* must be denied because Plaintiff's choice of forum is entitled to a high degree of deference under the circumstances of this case and because all of the other relevant facts and circumstances lead to the conclusion that this forum is more convenient than the alternative forum advocated by Defendant A/S Dampskibsselskabet Torm. Accordingly, the Motion to Dismiss must be denied in all respects.

Dated: January 22, 2008
         New York, NY

                              The Plaintiff,
                              NURSAN METALURJI ENDUSTRISI A.S.,


By:_____
                              Patrick F. Lennon
                              Charles E. Murphy
                              Coleen A. McEvoy
                              LENNON, MURPHY & LENNON, LLC
                              The GrayBar Building
                              420 Lexington Ave., Suite 300
                              New York, NY 10170
                              (212) 490-6050 – phone
                              (212) 490-6070 – fax

## **AFFIRMATION OF SERVICE**

I hereby certify that on January 22, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's CM/ECF system.

Patrick F. Lennon