UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
NURSAN METALURJI ENDUSTRISI A.S.,

                    Plaintiff,

                                      Case No.: 07 CIV 7687 (GBD)

        -against-

M/V "TORM GERTRUD" her engines, tackle,
boilers, etc. *in rem*, M/V "NEW FLAME" her engines,
tackle, boilers, etc. *in rem*,
A/S DAMPSKIBSSELSKABET TORM, TRANSMAR
SHIPPING CO. S.A., GLADIATOR NAVIGATION S.A.,
*in personam*,

                    Defendants.
-------------------------------------------------------------------------x


**DEFENDANT A/S DAMPSKIBSSELSKABET TORM'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND FORUM NON CONVENIENS**


NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
Tel: (212) 220-3830
Fax: (212) 220-3780

*Attorneys for Defendant
A/S DAMPSKIBSSELSKABET TORM*


Of Counsel:

    James F. Sweeney (JS-7745)
    Terry L. Stoltz (TS-7650)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... ii

POINT I

    THE COURT LACKS PERSONAL JURISDICTION OVER TORM ..................................... 1

        A.   Doing Business under C.P.L.R. § 301 ............................................................ 1

        B.   Torm is not Subject to Jurisdiction under Fed. R. Civ. P. 4(k)(2) .................................. 7

POINT II

    THE ACTION AGAINST TORM SHOULD BE DISMISSED
    FOR FORUM NON CONVENIENS ....................................................................... 8

        A.   Deference to Plaintiff's Choice of Forum ........................................................ 10

        B.   Private Interest Factors .......................................................................... 11

        C.   Public Interest Factors ........................................................................... 14

CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*ASARCO, Inc. v. Glenara, Ltd.*,
   912 F.2d 784 (5th Cir. 1990) ......................................................................... 8

*Atlantic Mut. Ins. Co. v. CSX EXPEDITION*,
   No. 00 Civ. 7668, 2004 WL 21756414 (S.D.N.Y. July 30, 2003),
   *amended by*, 2003 WL 22097774 (S.D.N.Y. Sept. 9, 2003) ...................... 2

*Clark v. Fonix Corp.*,
   No. 98 Civ. 6116, 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999)
   *aff'd* 199 F.3d 1321 (2d Cir. 1999) ........................................................... 1

*Glacier Refrigeration Serv., Inc. v. Am. Transp., Inc.*,
   467 F. Supp. 1104 (E.D.N.Y. 1979) ............................................................ 5

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947),
   *superseded by statute on other grounds as explained*
   *in American Dredging Co. v. Miller*, 510 U.S. 443 (1994) ........... 11, 13-15

*Gummow v. Cole*,
   No. 02C1321, 2002 WL 959836 (N.D. Ill. May 9, 2002) .......................... 6

*International Marine Underwriters v. M/V TORM FREYA*,
   Docket No. 01 Civ. 6098 (WHP) (S.D.N.Y. Oct. 5, 2001) ....................... 7

*International Terminal Operating Co. v. Skibs A/S Hidlefjord*,
   63 F.R.D. 85 (S.D.N.Y. 1973) ................................................................. 5, 7

*IP Co. v. Gen. Communications, Inc.*,
   No. 07 Civ. 2372, 2007 WL 3254387 (S.D.N.Y. Oct. 31, 2007) ........... 1, 3

*Iragorri v. United Tech. Corp.*,
   274 F.3d 65 (2d Cir. 2001) ...................................................................... 10

*Ivanhoe Trading Co. v. M/S BORNHOLM*,
   160 F. Supp. 900 (S.D.N.Y. 1957) ............................................................ 4

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*
   *Motonave Achille Lauro in Amministrazione*, 937 F.2d 44 (2d Cir. 1991) ............... 6

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) ................................................................................. 14

*In re Kreta Shipping, S.A.*,
  No. 96 Civ. 1137, 1998 WL 173167 (S.D.N.Y. Jan. 29, 1998)............................................ 4, 8

*Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*,
  918 F.2d 1039 (2d Cir. 1991)........................................................................................ 3, 7

*Laufer v. Ostrow*,
  55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982)........................................ 3

*The L.W. EATON*, 15 F. Case 1119 (S.D.N.Y. 1878),
  *disapproved by, In re Devoe Mfg. Co.*, 108 U.S. 401 (1883) .................................... 4

*In re Maritima Aragua, S.A.*,
  823 F. Supp. 143 (S.D.N.Y. 1993)........................................................................... 12-13

*Mullins v. Hak*, 674 F. Supp. 997 (E.D.N.Y. 1987)................................................... 5

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)..................................................... 14

*Porina v. Marward Shipping Co.*,
  No. 05 Civ. 5621, 2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ............................. 8

*Seguridad de Centroamerica S.A. v. M/V GLOBAL MARINER*,
  No. 01 Civ. 0456, 2002 WL 530979 (S.D.N.Y. Apr. 9, 2002)........................... 12-13

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*,
  __ U.S. __, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007)......................................... 10

*Stutts v. De Dietrich Group*,
  465 F. Supp. 2d 156 (E.D.N.Y. 2006) ............................................................. 7, 8

*United States v. Swiss Am. Bank, Ltd.*,
  191 F.3d 30 (1st Cir. 1999)............................................................................... 7

*USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
  421 F.3d 129 (2d Cir. 2005)............................................................................. 9

*Williams Sys., Ltd. v. Total Freight Sys., Inc.*,
  27 F. Supp. 2d 386 (E.D.N.Y. 1998) ........................................................... 5, 6

*Williams v. Green Bay & W.R. Co.*, 326 U.S. 549................................................. 13, 14

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)............................................................................. 3

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980) ................................................................................ 2, 5, 6

*Yacone v. Excalibre Motor Lines,*
  298 A.D.2d 874, 748 N.Y.S.2d 831 (4th Dept. 2002) .................................. 5

**Statutes**

28 U.S.C. § 110 ........................................................................................ 4

28 U.S.C. § 112(b) ..................................................................................... 4

Fed. R. Civ. P. 12 .................................................................................... 15

Fed. R. Civ. P. 4 .................................................................................... 7, 8

Fed. R. Civ. P. Supp. Admiralty Rule E ................................................... 4

N.Y.  C.P.L.R. § 301 (McKinney 2001) ................................................ 1, 5, 8

N.Y. C.P.L.R. § 302 (McKinney 2001) ..................................................... 1

## POINT I

## THE COURT LACKS PERSONAL
## JURISDICTION OVER TORM[1]

### A.    Doing Business under C.P.L.R. § 301[2]

Nursan asserts five bases for personal jurisdiction over Torm.  In each instance Nursan ignores inconvenient facts in favor of totally unsupported factual assertions.  As several of those unsupported assertions are patently false, the Court should reject all of Nursan's statements not supported by proper evidence.

(1) Torm's Listing on the NASDAQ:  Torm concedes that it has been listed on the NASDAQ since 2002.  (Hansen RDec. ¶ 2).[3]  But Nursan ignores that "[r]aising financing is not a form of 'doing business' for the purpose of § 301; if it were, then almost every company in the country would be subject to New York's jurisdiction."  *Clark v. Fonix Corp.*, No. 98 Civ. 6116, 1999 WL 105031, at *5 (S.D.N.Y. Mar. 1, 1999) *aff'd* 199 F.3d 1321 (2d Cir. 1999) (table decision).   "[H]aving securities listed on New York-based stock exchanges and performing activities necessary to facilitate those listings, without more, are insufficient to confer New York jurisdiction over a foreign corporation."  *IP Co. v. Gen. Communications, Inc.*, No. 07 Civ. 2372, 2007 WL 3254387, at *3 (S.D.N.Y. Oct. 31, 2007).

---

[1]  Nursan does not dispute Torm's argument that this Court lacks *in rem* jurisdiction over the TORM GERTRUD. *See* Memo in Support at pp. 9-10.

[2]  In the caption of Point I(A)(1) Nursan refers to N.Y. C.P.L.R. § 302 (McKinney 2001), but it is clear from the text that Nursan relies solely on § 301 "doing business" as a basis for personal jurisdiction over Torm and does not rely on the long arm jurisdiction provisions of section 302.  *See* Torm's Memo in Support at pp. 8-9.

[3]  "Hansen RDec." refers to the Reply Declaration of Anne Mentz Hansen.  "Triay RDec." refers to the Reply Declaration of Julian Triay; "Stoltz Dec." refers to the Declaration of Terry L. Stoltz; "Memo in Support" refers to Torm's original Memorandum of Law in Support of the Motion to Dismiss; "Memo in Opposition" refers to Nursan's Memorandum of Law in Opposition to the Motion to Dismiss; "Hansen Dec." refers to the original Declaration of Anne Mentz Hansen; "Triay Dec." refers to the original Declaration of Julian Triay; "Lennon Aff." refers to the affidavit of Patrick Lennon submitted by Nursan.

Nursan then baldly asserts that since it has a NASDAQ listing, "Torm attends meetings, conducts business and solicits business in New York." (Memo in Opposition at p. 5). In fact, Torm does not advertise or solicit business in New York. (Hansen Dec. ¶ 2).

(2) <u>Purchase of OMI</u>: Next, Nursan asserts the joint acquisition of OMI Corp. by Torm and Teekay Corporation — another foreign shipowner — "has further increased Torm's presence . . . in New York" (Memo in Opposition at p. 5),[4] ignoring that OMI was a Marshall Islands company headquartered in Connecticut, not New York. (Hansen RDec. ¶ 6). The Supreme Court has "never accepted the proposition that state lines are irrelevant for jurisdictional purposes." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980).

Without any support whatsoever, Nursan then claims that the "acquisition of OMI by Torm took place in New York." (Memo in Opposition at p. 5). In fact, there was no formal closing and Torm executed the documents in Copenhagen, Denmark. (Hansen RDec. ¶ 7). In any event, attending at a New York law office to sign a contract with a foreign corporation "does not even meet the level of an 'occasional' contact with a New York business let alone 'continuous, permanent and substantial' activity." *Atlantic Mut. Ins. Co. v. CSX EXPEDITION*, No. 00 Civ. 7668, 2004 WL 21756414, at *2 n.3 (S.D.N.Y. July 30, 2003), *amended by*, 2003 WL 22097774 (S.D.N.Y. Sept. 9, 2003).

Furthermore, the purpose of the transaction was to increase the number of vessels in Torm's fleet. (Hansen RDec. ¶ 6). The vessels in the fleet are the "supplies" that Torm uses to provide ocean transportation of cargoes to its clients. Thus, the transaction was effectively a one-time purchase of supplies. Purchases of supplies in New York "even if occurring at regular

---

[4] Nursan intimates that the purpose of the acquisition of OMI was to "insure Torm's presence in the American market." (Memo in Opposition at p. 5). Of course, the American market is not just New York, but all ports in North and South America. (Hansen RDec. ¶ 8). Nursan has offered no evidence that the acquisition of OMI has increased Torm's presence in New York. (Hansen RDec. ¶ 8).

intervals, is not enough without more to establish 'doing business' and does not warrant the inference that the corporation was present with the jurisdiction of New York." *IP Co.*, 2007 WL 3254387, at *4.

(3) <u>Appointment of Allen & Caron ("A&C")</u>:  Lacking any supports, Nursan makes the naked allegation that Torm appointed A&C at the time of the OMI acquisition.  (Memo in Opposition at p. 5).  In fact, A&C was appointed in 2003, but the contract with A&C was terminated in November 2006.  (Hansen RDec. ¶¶ 3, 5).

Without any factual basis, Nursan asserts that A&C was "soliciting business in New York."  (Memo in Opposition at p. 6).  In fact, A&C was communicating with potential investors, not soliciting business.  (Hansen, RDec. ¶ 4).  Communicating with potential investors is the type of activity facilitating a stock exchange listing that does not confer personal jurisdiction over Torm, *IP Co.*, 2007 WL 3254387, at *3, and Torm does not solicit business in New York.  (Hansen RDec. ¶ 2).  In any event, "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign . . . purveyor of services." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310, 434 N.E.2d 692, 694, 449 N.Y.S.2d 456, 459 (1982). Jurisdiction is only supportable "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state . . . ."  *Landoil Res. Corp. v. Alexander & Alexander Serv., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991).

Furthermore, Nursan's assertion that the actions of an independent agent such as A&C can be the foundation of personal jurisdiction over Torm is incorrect.  The "agent must be primarily employed by the defendant and not engaged in similar services for other clients" before the actions of the agent can be the basis of jurisdiction over a foreign defendant.  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).  In other words, the agent must be

exclusive. That is not present here. Torm was just one of many clients represented by A&C. (Hansen RDec. ¶ 3).

(4) <u>Number of Vessels in Torm's Fleet</u>: Torm admits that it owns and operates a substantial fleet. (Hansen Dec. ¶ 3). However, Nursan asks this Court's blind faith that it "is likely that several, if not the majority, of [Torm's] vessels have made port calls in the port of New York over the last year." (Memo in Opposition at p. 6).[5] In truth, during the prior twelve months, only nine of Torm's voyage-chartered vessels were directed by Torm's clients to call in the Port of New York and New Jersey a total of twenty-one times. (Hansen Dec. ¶ 6).

These port calls are not significant for jurisdictional purposes as the decisions to proceed to New Jersey were made by the vessels' voyage charterers. (Torm's Memo in Support at p. 7). *See In re Kreta Shipping, S.A.*, No. 96 Civ. 1137, 1998 WL 173167, at *6 (S.D.N.Y. Jan. 29, 1998) (collecting cases).[6]

All of Torm's vessels calling in the Port of New York and New Jersey in the last twelve months actually docked at terminals in New Jersey. (Hansen Dec. ¶ 6). A vessel docked in New Jersey cannot be served with an *in rem* warrant of arrest issued out of the Southern District of New York. Supplemental Admiralty Rule E(3)(a).[7] Loading or discharging cargo at a dock in

---

[5] The Port of New York (actually now properly referred to as the Port of New York and New Jersey, *see* http://www.panynj.gov/DoingBusinessWith/seaport/html/index.html, encompasses terminals in both New York and New Jersey.

[6] Nursan counter-cites *Ivanhoe Trading Co. v. M/S BORNHOLM*, 160 F. Supp. 900 (S.D.N.Y. 1957), which it asserts held that the actions of the subcharterer (the plaintiff), were attributable to the owner for jurisdictional purposes. But that opinion actually based jurisdiction over the owner on the conduct of a managing agent, not the subcharterer. The case does not address Torm's argument.

[7] Nursan relies on a case over a hundred years old to establish that vessels tied up at a dock in New Jersey are subject to the jurisdiction of this Court. *The L.W. EATON*, 15 F. Case 1119 (S.D.N.Y. 1878), *disapproved by*, *In re Devoe Mfg. Co.*, 108 U.S. 401, 417 (1883). However, since 1948, the boundaries of the District Courts for New Jersey and the Southern District of New York have coincided with the state boundaries. *See* 28 U.S.C. §§ 110, 112(b). In order for a vessel to be subject to *in rem* arrest, it must be present within the district. Supplemental Admiralty Rule E(3)(a).

4

New Jersey is not a basis for jurisdiction in New York. *See Int'l Terminal Operating Co. v. Skibs A/S Hidlefjord*, 63 F.R.D. 85, 86 (S.D.N.Y. 1973); *see also World-Wide Volkswagen Corp.*, 444 U.S. at 293.

Nursan then asserts that the vessels would have "necessarily transited New York Southern District waters to arrive at New Jersey . . . ." (Memo in Opposition at p. 7). However, transit through New York by a carrier, even making occasional deliveries, does not satisfy C.P.L.R. § 301. *See Yacone v. Excalibre Motor Lines*, 298 A.D.2d 874, 875, 748 N.Y.S.2d 831, 832 (4th Dept. 2002); *Williams Sys., Ltd. v. Total Freight Sys., Inc.,* 27 F. Supp. 2d 386, 388 (E.D.N.Y. 1998); *Mullins v. Hak*, 674 F. Supp. 997, 998-99 (E.D.N.Y. 1987); *Glacier Refrigeration Serv., Inc. v. Am. Transp., Inc.*, 467 F. Supp. 1104, 1106-07 (E.D.N.Y. 1979).

Nursan asserts that Torm's vessels calling at terminals in New Jersey "took advantage of New York port facilities while in New Jersey." (Memo in Opposition at p. 7). There is no evidence that any of the port services used by the vessels were provided in New York, as opposed to New Jersey. In any event, all of Torm's payments to vendors/suppliers in the entire United States represent only 0.01% of Torm's expenditures and the fuel to operate the vessels' engines and machinery purchased in the Port of New York and New Jersey is only 1.09% of the fuel purchased by Torm. (Hansen Dec. ¶ 9). This simply does not constitute a systematic and regular contact with the state sufficient to find that Torm is "doing business" in New York.

Finally, Nursan baldly asserts without any support that "Torm has a very long history of business dealings in the United States generally, and particularly within the State of New York." (Memo in Opposition at p. 7). At one time, Torm did operate a liner service into the Port of New York and New Jersey. However, that service was sold in September 2002. (Hansen RDec. ¶ 11). The Supreme Court stated that a foreign corporation could "alleviate the risk of

burdensome litigation by . . . severing its connection with the State." *World-Wide Volkswagen*, 444 U.S. at 297. Whether Torm is subject to personal jurisdiction in this action turns on whether it was doing business in New York at the time that this suit was filed in August 2007, and not whether it had done business prior to the sale of the liner service in 2002. *See Williams Sys., Ltd.,* 27 F. Supp. 2d at 388 (no personal jurisdiction where defendant had closed office in Albany "several months prior to the commencement of this action"); *Gummow v. Cole*, No. 02C1321, 2002 WL 959836, at \*3 (N.D. Ill. May 9, 2002) (no personal jurisdiction over a defendant who severed ties with state nearly four years before the suit).

(5) <u>Litigation in the Southern District of New York</u>:  Finally, Nursan points to Torm's prior litigation in this Court[8] as evidence that Torm is doing business in New York. (Lennon Aff. ¶ 10(b), Exh. 5; Memo in Opposition at p. 8). With the single exception of this action, all of the cases in this Court were closed more that 3 years before this action was started. (Stoltz Dec., Exh. 1). Since Torm terminated its liner service to New York in 2002 (Hansen RDec. ¶ 11), this prior litigation history is no evidence that Torm is doing business in New York at this time. *World-Wide Volkswagen*, 444 U.S. at 297; *Gummow*, 2002 WL 959836, at \*3.

Nursan next alleges, without evidence, that "Torm did not contest jurisdiction in any of the cases it defended . . . ." (Memo in Opposition at p. 8). Even if that were true, "consent to jurisdiction in one case . . . extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction . . . where the party does not consent and no other jurisdictional basis is available." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione*, 937 F.2d 44, 50 n.5 (2d Cir. 1991). But in fact, it is not true.

---

[8] Nursan also looks to a litigation currently pending in the District of Connecticut where Torm allegedly did not contest jurisdiction. (Memo in Opposition, p. 8). In fact, Torm has, along with the other defendants, filed a motion to dismiss on the basis of *forum non conveniens* (Stoltz Dec., Exh. 3), just as it has in this case.

Tellingly, in the case of *International Marine Underwriters v. M/V TORM FREYA*, Docket No. 01 Civ. 6098 (WHP) (S.D.N.Y. Oct. 5, 2001), Patrick Lennon, Nursan's counsel in this case, filed an Answer on behalf of Torm alleging lack of personal jurisdiction (Stoltz Dec., Exh. 2 at ¶ 19).

In summary, none of the alleged bases relied upon by Nursan in asserting personal jurisdiction over Torm in any way establishes the "fair measure of permanence and continuity" required to find that Torm is doing business in the State of New York. *Landoil Res. Corp.*, 77 N.Y.2d at 33, 565 N.E.2d at 490, 563 N.Y.S.2d at 741.[9]

### B.    Torm is not Subject to Jurisdiction under Fed. R. Civ. P. 4(k)(2)

Nursan's reliance on Federal Rule of Civil Procedure 4(k)(2) is misplaced. It has failed to allege in the complaint the bases required for jurisdiction under that section. *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 165-66 (E.D.N.Y. 2006).

In order to establish jurisdiction under 4(k)(2), Nursan's prima facie case:

> "includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements. [Nursan], moreover, must certify that . . . the defendant is not subject to suit in the courts of general jurisdiction of any state."

*United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41-42 (1st Cir. 1999).

Nursan has failed to establish that Torm's contacts with the nation as a whole are sufficient to satisfy due process and has failed to show that Torm is not subject to suit in any of the fifty states. The only contacts that Nursan has referenced are the calls of Torm's vessels in

---

[9] Nursan implies that discovery would disclose additional grounds for jurisdiction over Torm. (Memo in Opposition at pp. 7 & 11). However, this Court should not allow Nursan to engage in a "fishing expedition to discover the possible presence in New York of a foreign corporation where . . . all there is to pursue is a plaintiff's fanciful hope." *Int'l Terminal Operating Co.*, 63 F.R.D. at 87.

New Jersey in the last twelve months and Torm USA's office in Connecticut.[10]  Even assuming

that the vessels' calls in New Jersey at the direction of the voyage charterers are jurisdictionally

significant (*but see* Memo in Support at p. 7; *see also In re Kreta Shipping, S.A.*,

1998 WL 173167, at *6 (collecting cases)), there are not enough calls in the last twelve months

(Hansen Dec. ¶ 6) to satisfy due process requirements.  *See ASARCO, Inc. v. Glenara, Ltd.*,

912 F.2d 784, 787 (5th Cir. 1990) (forty-seven port calls over a little more than three years

insufficient); *see also In re Kreta Shipping, S.A.*, 1998 WL 173167, at *7 (collecting cases).

Furthermore, Nursan has made no allegations of interdependence between Torm and Torm USA

to justify using the presence of Torm USA's office in Connecticut as a basis for jurisdiction over

Torm.  *See Stutts*, 465 F. Supp. 2d at 166-67.

Finally, Nursan has made no attempt to meet its burden to show that Torm is not subject

to jurisdiction in one of the other forty-nine states.  *See Porina v. Marward Shipping Co.*,

No. 05 Civ. 5621, 2006 WL 2465819, at *4 (S.D.N.Y. Aug. 24, 2006).

Nursan has failed to establish that personal jurisdiction is proper under either

N.Y. C.P.L.R. § 301 (McKinney 2001) or Federal Rule of Civil Procedure 4(k)(2).

## POINT II

### THE ACTION AGAINST TORM SHOULD BE
### DISMISSED FOR FORUM NON CONVENIENS

On the *forum non conveniens* issue in this case, the Supreme Court of Gibraltar has

spoken.  Mr. Acting Chief Judge Dudley aptly put it thus:

> [T]he collision between the vessels having been occurred just off
> Gibraltar I am of the view that the natural forum for the resolution
> of disputes arising from the collision is Gibraltar . . . .   [I] am

---

[10]  Nursan also refers to Torm's contact with Florida, presumably referring to the intended destination of the TORM GERTRUD at the time of the collision.  However, the vessel never actually arrived in Florida.  (Triay Dec., Exh. A).

persuaded at this stage that Gibraltar remains the most appropriate
forum. . . .

(Triay RDec., Exh. B at p. 29).

Torm has filed a limitation proceeding in the Gibraltar courts and has posted a limitation
of fund of £4,193,482.30 in that proceeding.  (Triay RDec. ¶ 11, Exh. C4).  Moreover, the
respective shipowner-defendants Torm and Gladiator, have agreed to litigate the
NEW FLAME/TORM GERTRUD collision before the courts of Gibraltar (with an option to
refer the dispute to arbitration) (Stoltz Dec., Exh. 4), all further anchoring the dispute in
Gibraltar, where it rightfully belongs.

In stark contrast, Nursan can only point to some Southern District of New York forum
selection clauses found in contracts and charterparties with non-parties.  Nursan then alleges that
these clauses somehow make this District convenient.  Yet none of the three named defendants
(Torm, Transmar and Gladiator) are signatories to these clauses, and Nursan has not shown how
either Transmar or Gladiator are bound thereby.[11]  Most importantly, and indisputably, the
clauses have no effect whatsoever on Torm, a complete stranger to those contracts and
charterparties.

Nursan also insinuates that due to relative court congestion (*see* Azopardi Aff. ¶¶ 25
& 26), this action could be reached for trial before any Gibraltar action.  But the Second Circuit
has recently upheld a *forum non conveniens* dismissal even where there was a ten to fifteen year
backlog in the proposed alternative forum.  *See USHA (India), Ltd. v. Honeywell Int'l, Inc.*,
421 F.3d 129, 135 (2d Cir. 2005).  Thus, Mr. Azopardi's estimate of a trial within twelve to

---

[11]  The cited contract and charterparty forum selection clauses involve Nursan, Sims and ED&F Man Shipping Ltd.
Nether Sims nor ED&F Man are parties to this action.

eighteen months from now presents no impediment to the granting of this *forum non conveniens* relief.

###### A.    Deference to Plaintiff's Choice of Forum

Ordinarily, a defendant bears a heavy burden in opposing the plaintiff's choice of forum. "When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Co.*, __ U.S. __, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).  In addition,

> the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons — such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case . . . — the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts.

*Iragorri v. United Tech. Corp.*, 274 F.3d 65, 72.  (2d Cir. 2001).

Here, Nursan candidly admitted to the Court in Gibraltar that its choice of this forum was motivated not by convenience, but with the aim of maximizing recovery of its loss (Stoltz Dec., Exh. 5 ¶ 14) through application of "the innocent cargo rule" and limitation of liability regime under U.S. law.  (Stoltz Dec., Exh. 6 ¶¶ 13-19; *see also* Complaint ¶ 12).  As such, plaintiff's choice of this forum is entitled to little, if any, deference.

Nursan's only hope of legitimizing its choice of this inconvenient forum is by clinging to the aforesaid forum selection clauses.  But again, the clauses have no effect whatsoever as against Torm.

B.    **Private Interest Factors**

The *Gilbert* "private interest'" factors, addressed in detail in Torm's Memorandum, are as follows:  (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; (4) possibility of view of premises, if view would be appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded by statute on other grounds as explained in American Dredging Co. v. Miller*, 510 U.S. 443, 449, n.2 (1994).

Nursan, in its Opposition Memorandum addresses only the first factor and none of the other four factors.  According to Nursan, under this solitary factor, there is "convenience by osmosis":

> [T]orm will have access to sources of proof due to the presence of co-defendants that are parties to this action, but that will not be parties to any action in Gibraltar. . . .  Thus the most practical consideration is the presence of co-defendants, which will cause witnesses and documentation to be in this jurisdiction, thereby increasing convenience for all parties.

(Memo in Opposition at p. 20).  But nothing could be further from the truth.

There is nothing to bind the defendant shipmanager Transmar to this jurisdiction.  It is not a party to any New York forum selection clause.  Although Nursan claims that Transmar's presence in this action will somehow make matters more convenient for all parties, Nursan has not yet bothered to effect service of process upon defendant Transmar and the 120 day period for doing so has now expired.  In short, Transmar's presence (in name only) here adds nothing to the *forum non conveniens* inquiry.

As for the defendant-shipowner Gladiator (also not a party to the New York forum selection clause), it has agreed to the exclusive jurisdiction of the Gibraltar courts in connection

with the inter-ship collision claims. (Stoltz Dec., Exh. 4). Moreover, it did not file a cross-claim against Torm in the case at bar.

Under the circumstances, Nursan's argument is exposed as specious. Neither co-defendant is anything but a named party herein. Neither has cross-claimed against Torm. Indeed, the inter-ship collision claims (i.e., the crux of the merits herein) will be litigated *only* in Gibraltar (subject to an option for London arbitration). (Stoltz Dec., Exh. 4). The inter-ship collision claims have no nexus to this court, none, and will not be litigated in this Court. Thus, Nursan's claim that "the presence of co-defendants . . . will cause witnesses and documentation to be in this jurisdiction, thereby increasing convenience" must be squarely rejected.[12] Since these co-defendants have agreed to litigate the collision in Gibraltar, any re-litigation of that same issue here would only be duplicative, wasteful and anything but convenient.

Nursan cites *Seguridad de Centroamerica S.A. v. M/V GLOBAL MARINER*, No. 01 Civ. 0456, 2002 WL 530979 (S.D.N.Y. Apr. 9, 2002). Although Nursan avers that the case is factually similar, it is not. Nursan carefully avoids mention of several distinguishing facts that were present in that case, but not present here, and that were determinative in that court's decision to deny the *forum non conveniens* dismissal. First, in *Seguridad*, the defendants had instituted a parallel limitation proceeding in the Southern District arising out of the same collision. The court reasoned that the requisite proofs in that limitation proceeding would necessarily have to be produced here anyway. In the case at bar, no limitation proceedings have been filed in this District; the *only* limitation proceeding is pending in Gibraltar.[13] Second, the

---

[12] (Memo in Opposition at p. 20). Tellingly, Nursan cites no legal authority for its novel argument that the mere presence of co-defendants with supposed production of proofs in this action somehow transforms this Court into a convenient forum.

[13] Nursan and the *Seguridad* court also cited and relied upon Judge Sweet's decision in *In re Maritima Aragua, S.A.*, 823 F. Supp. 143 (S.D.N.Y. 1993). But there again, the companion limitation proceeding tipped the balance in favor of the plaintiff: "The crucial factor in the case at bar is the presence of the Limitation Proceedings . . . . The

non-carrying vessel had agreed to appear in the *Seguridad* action. No such agreement exists here; indeed, the exact opposite is true: Torm is now moving to dismiss this action for lack of personal jurisdiction. Third, in *Seguridad* the proceeds from the salvaged cargo were located in New York. That factor is entirely absent here. Rather, the cargo itself remains in the territorial waters of Gibraltar. In short, the court's decision in *Seguridad* rested upon the pendency of these additional factors, none of which are present in the case at bar. Accordingly, *Seguridad* is inapposite and cannot be followed.

At page 20 of its Memorandum, Nursan states the following:

> Plaintiffs should not be deprived of their choice of forum except upon defendant's clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience. *See e.g. Williams v. Green Bay & W.R. Co.*, 326 U.S. 549 (1946).

But *Williams*, a pre-*Gilbert* decision, does not stand for this proposition. In *Williams*, the Supreme Court enunciated no such standard or burden of proof requirement as to vexatiousness or oppression. What the *Williams* Court did say is that:

> Maintenance of a suit away from the domicile of the defendant — whether he be a corporation or an individual — *might* be vexatious or oppressive . . . . *We give these merely as illustrations. Each case turns on its facts.*

*Williams v. Green Bay & W.R. Co.*, 326 U.S. 549, 555-56 (emphasis added). The case simply does not say what Nursan erroneously suggests. In any event, it was *Gilbert*, handed down the

---

claims and evidence required for the Limitation Proceedings are simply too substantially similar to justify transfer [to the foreign forum]. . . ." *Id.* at 147 & 150. No such limitation proceeding exists here and thus *Maritime Aragua*, like *Seguridad*, is not a helpful precedent.

13

following year, that unequivocally set forth the burdens and proper analysis to be followed upon a *forum non conveniens* motion.[14]  Torm has, accordingly, adhered to the *Gilbert* analysis.

### C.    Public Interest Factors

Of the four *Gilbert* "public interest" factors that a court must weigh upon a *forum non conveniens* motion, Nursan focuses upon only one:  the avoidance of unnecessary problems in conflict of laws or in application of foreign law.  And as for this single isolated factor, Nursan does not argue that it tilts the balance; Nursan can only feebly state that when taken alone, it is insufficient to warrant a *forum non conveniens* dismissal.  But that is true of all the *Gilbert* factors:  they are never to be considered in isolation, but must be weighed in combination with one another.[15]  Weighing all those "public interest" factors together (as Nursan has failed to do) compels the conclusion that Gibraltar, not New York, is the proper and most convenient forum.

Nursan also misapprehends Torm's argument.    Torm is *not* arguing (as Nursan erroneously contends) that under *Gilbert*, this Court should weigh the relative outcomes of applying the 1910 Collision Convention versus the "innocent cargo" rule.[16]    Rather, Torm contends that under the *Gilbert* test, this conflict-of-law question is a convoluted and unnecessary problem confronting this Court in the event that this motion is denied.[17]    To

---

[14]  Nursan acknowledges that "[t]he *Gilbert* standard . . . is the proper one for determining motions to dismiss on the ground of forum non conveniens, including those in admiralty actions."  (Memo in Opposition at p. 17).

[15]  In *Gilbert*, the Supreme Court refused to identify specific circumstances "which will justify or require either grant or denial of remedy."    330 U.S. at 508.    Similarly, in *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947), the Court rejected the contention that where a trial would involve inquiry into the internal affairs of a foreign corporation, dismissal was always appropriate.    "That is one, but only one, factor which may show convenience . . . ."  And in *Williams*, 326 U.S. at 557, the Supreme Court stated that it would not lay down a rigid rule to govern discretion, and that "[e]ach case turns on its facts."    If central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable.    *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981).

[16]  In the context of the deference due to plaintiff's choice of law, however, Torm maintains that Nursan's urging of the "innocent cargo" rule constitutes blatant forum-shopping.  *See*, *supra*, Point II, A.

[17]  Indeed, Torm has already moved the Court for partial summary judgment on this very conflict-of-law issue.

complicate matters, should the Court find that the 1910 Collision Convention governs, then this Court will have to apply that foreign law to this Gibraltar collision.

Moreover, Nursan fails to even address the additional conflict of laws that this Court must also face as a result of Nursan having chosen this inconvenient forum, namely the application of the 1976 Limitation Convention versus the U.S. Limitation of Liability Act, (discussed at Point III, C(4) of Torm's Memorandum of Law in Support, dated December 10, 2007) and the conflicting interpretation/application of the COLREGS (Collision Regulations) as between the courts of this country and European courts.  (*See* discussion at Point III, C(5) in Torm's Memo in Support).

Nursan has failed to offer any opposition to any of the remaining *Gilbert* public interest factors that were raised and discussed by Torm (*see* Torm Memo in Support at Point III, C), and which all militate for dismissal in favor of the Gibraltar forum.

## **CONCLUSION**

Because this Court lacks personal jurisdiction over Torm and *in rem* jurisdiction over the TORM GERTRUD and because this is an inconvenient forum while another more suitable convenient forum exists, this Court should dismiss the action as against defendants Torm and the TORM GERTRUD pursuant to Federal Rule of Civil Procedure 12(b)(2) and the doctrine of *forum non conveniens*.

Dated: February 19, 2008
       New York, New York


                         Respectfully submitted,

                         NICOLETTI HORNIG & SWEENEY
                         *Attorneys for Defendant*
                         A/S DAMPSKIBSSELSKABET TORM


                         By:_____s/ James F. Sweeney_____
                                James F. Sweeney (JFS-7745)
                                Wall Street Plaza
                                88 Pine Street, 7th Floor
                                New York, New York  10005-1801
                                Telephone No.: (212) 220-3830
                                Facsimile No.: (212) 220-3784
                                E-mail: jsweeney@nicolettihornig.com
                                (FILE NO.: 00000798 JFS)

**TO:**

Patrick F. Lennon, Esq.
Charles E. Murphy, Esq.
LENNON, MURPHY & LENNON, LLC
*Attorneys for Plaintiff*
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone No.: (212) 490-6050
Facsimile No.: (212) 490-6070
E-mail: pfl@lenmur.com; cem@lenmur.com


Peter J. Gutowski, Esq.
Gina M. Venezia, Esq.
FREEHILL HOGAN AND MAHAR LLP
*Attorneys for Gladiator Navigation S.A.*
80 Pine Street
New York , N.Y. 10005-1759
Telephone No.: 212-425-1900
Facsimile No.: 212-425-1901
E-mail:  gutowski@freehill.com; venezia@freehill.com


X:\Public Word Files\0\798\Legal\Motion - Dismiss\Torm's Reply\Reply to Nursan Opposition to Dismiss (Final).doc