UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
NURSAN METALURJI ENDUSTRISI, A.S.,

                Plaintiff,

      -against-

M/V "TORM GERTRUD" her engines, tackle,
boilers, etc. *in rem*, M/V "NEW FLAME" her engines,
tackle, boilers, etc. *in rem*,
A/S DAMPSKIBSSELSKABET TORM, TRANSMAR
SHIPPING CO. S.A., GLADIATOR NAVIGATION S.A.,
*in personam*,

                Defendants.
------------------------------------------------------------------x

Case No.: 07 CIV 7687 (GBD)

**REPLY
DECLARATION OF
ANNE MENTZ HANSEN**

Pursuant to 28 U.S.C. § 1746, ANNE MENTZ HANSEN, declares as follows:

1. I am the Claims Manager of the Insurance and Claims Department of defendant A/S Dampskibsselskabet Torm ("Torm"). I make this reply declaration in further support of Torm's motion to dismiss the Verified Complaint on the basis of my own personal knowledge and information derived from the files of Torm.

2. Since April 2002, Torm has had a listing on the NASDAQ. However, it is a listing for depository receipts, and not Torm's actual shares, which are only traded on the Danish stock exchange.

3. In conjunction with the listing on the NASDAQ, in 2003 Torm appointed Allen & Caron ("A&C") to assist in North America with corporate communications to investors and the financial media. Torm dealt with both the New York and London offices of A&C. A&C did not work exclusively for Torm. In fact, Torm was one of many clients for whom A&C provided similar service. The fees that Torm paid to A&C for the services were minimal.

4.  During the period that the contract with A&C was valid, A&C's only function was to facilitate communications with potential investors and the financial media. They did not have any involvement in soliciting customers for whom Torm could transport cargoes on its fleet of ships.

5.  In November 2006, Torm terminated the appointment of A&C, although A&C continued to forward telephone inquiries to Torm through the end of 2007. Even that cooperation has now come to an end.

6.  In 2007, Torm and Teekay Corporation ("Teekay"), another foreign shipowner, agreed to acquire OMI Corporation ("OMI"). OMI was a Marshall Island company with offices in Stamford, Connecticut that owned a fleet of vessels. Under the terms of the agreement, Torm and Teekay formed a corporation called Omaha, Inc. ("Omaha"), which then was to purchase the shares of OMI and subsequently merge with OMI. After that was completed, the vessels in the OMI fleet were to be transferred to Torm and Teekay. From Torm's point of view, the purpose of the acquisition was to expand Torm's fleet of product tankers.

7.  Eventually a formal agreement was executed between Torm, Teekay, Omaha and OMI. Torm signed the documents in Copenhagen and forwarded them in pdf format to its lawyers in New York. No formal closing meeting ever was held.

8.  On Torm's website, Torm have stated that the acquisition would "ensure TORM's presence in the American market." The American market includes all ports in North and South America, and not just the Port of New York and New Jersey. To date, the acquisition has had no impact on the number of vessel calls by Torm's fleet in the Port of New York and New Jersey.

9.  As part of the agreement, Torm assumed the employment of some of OMI's Connecticut personnel. To that end, Torm formed a separate company, Torm USA LLC, who

then employed the OMI personnel. At the time of the collision, Torm USA LLC was not involved in the operation of Torm's product tanker fleet, including the TORM GERTRUD. However, since then, the employees of Torm USA LLC have become involved in the operation of the product tanker fleet.

10. Currently, Torm operates in two trades. The first is bulk commodities carried aboard its bulk carriers; the second is oils and petroleum products carried aboard its product tankers, like the TORM GERTRUD. As I stated in my original declaration executed on December 6, 2007, Torm's vessels that have called in the Port of New York and New Jersey in the last twelve months have all docked at terminals in New Jersey.

11. Torm also used to operate a liner service which made regular calls in the Port of New York and New Jersey. Torm sold that liner service to Maersk Lines, another Danish shipowner, on September 16, 2002. Since that time, Torm's vessels no longer make regular calls in the Port of New York and New Jersey.

12. During the time that Torm operated its liner service into the Port of New York and New Jersey, it would occasionally files suits in New York, generally to collect unpaid freight charges. In December 2001, Torm commenced its last action in this court arising out of its operation of the liner service. The suit was against US Africa Navigation Limited, and other defendants, arising out of a stock purchase agreement between Torm and USANL. Torm had entered into the agreement to acquire additional assets for its liner service. The case was concluded in September 2003. Torm has not brought any other cases in this District since December 2001.

      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 15th, 2008.

_____<br>
ANNE MENTZ HANSEN<br><br>
A/S DAMPSKIBSSELSKABET TORM