EXHIBIT 4

COLLISION LAW AND JURISDICTION AGREEMENT

BETWEEN:

(1) A/S DAMPSKIBSSELSKABET TORM

of Tuborg Havnevej 18, 2900 Hellerup, Denmark, the registered Owners of the "TORM GERTRUD" (hereinafter referred to as "TG")

(2) GLADIATOR NAVIGATION SA.

of 12th Floor, Torre Universal Building, Federico Boy, Panama 5, Panama, the registered Owners of the M/V "NEW FLAME" (hereinafter referred to as "NF")

WHEREAS:

A. A collision occurred on 12th August 2007 in Gibraltar waters between the NF and the TG ("the Collision").

B. As a result of the Collision both vessels suffered damage, with the NF being semi-submerged grounded on a reef in Gibraltar waters and was subsequently rendered a total loss.

C. Both parties have suffered significant loss and damage as a result of the Collision which each party asserts was caused by the negligence of the other vessel, her Master and/or crew.

D. Following the Collision, TG issued in rem proceedings against the NF before the Supreme Court of Gibraltar, Admiralty Jurisdiction under Claim No. 2007 AJ No. 2 (the "Gibraltar Proceedings"). As a result of the in rem proceedings commenced against the NF it is agreed by the parties that the Supreme Court of Gibraltar has jurisdiction over the Collision and claims that either party has against the other arising out of the collision all of which is governed by Gibraltar law.

E. The Owners of TG have commenced limitation proceedings in Gibraltar and have constituted a 1976 Limitation Convention limitation fund in Gibraltar (the "TG Limitation Fund").

F. The Owners of the NF reserve the right to commence a Limitation Action subject to the 1976 Limitation Convention, including the right to constitute a 1976 Limitation Fund ("the NF Limitation").

G. Nursan Metalurji Endustrisi A.S., who claim to be the owners of the cargo on board NF at the time of the Collision, have commenced proceedings against TG, NF, their respective Owners, and Transmar Shipping Co S.A before the United States District Court Southern District of New York (07 Civ 7687 (GBD)) ("the New York Proceedings"). TG have filed in the New York Proceedings, a motion to dismiss those proceedings as against TG ("the TG New York Motion").

H. The Owners of NF warrant that NF was not demise chartered at the time of the Collision.

I. The Owners of TG warrant that TG was not demise chartered at the time of the Collision.

HFWLDN\923895-3

1. In consideration of the above and the mutual covenants appearing herein below, IT IS HEREBY AGREED AS FOLLOWS

In order to provide the parties with an opportunity to reach an amicable settlement of the claims between them arising out of the Collision,

   (a) the Gibraltar Proceedings shall be stayed as between the parties hereto with immediate effect (without either party making an application to the Supreme Court of Gibraltar for an order for a stay) until the end of the Election Period (as defined below) or the lapse of 9 months from the date of this agreement, whichever happens sooner and no steps shall be taken by either party in respect of the Gibraltar Proceedings prior to the end of the Election Period or the lapse of 9 months from the date of this agreement, whichever occurs first, save for the purposes of either party commencing limitation proceedings as per paragraph 6 below; and

   (b) neither party shall commence any proceedings against the other party in any other jurisdiction in relation to the Collision.

2. Either party hereto may within 3 months of a final ruling in the New York Proceedings on the TG New York Motion, of the United States District Court for the Southern District of New York (after all appeals (if any)) ("the Election Period") elect to refer any and all disputes and/or claims whatsoever and howsoever arising between the parties from or in connection with the Collision to arbitration in London, subject to the Arbitration Act 1996, to the exclusion of any other jurisdiction, venue or forum.

3. If such an election to arbitrate is made then, save for the purposes of either party commencing limitation proceedings as per paragraph 6 below

   (a) any claim that either party has or may have against the other whatsoever and howsoever arising from or in connection with the Collision will be determined in accordance with English law and practice. It is agreed however that the 1976 Limitation Convention shall apply without taking into account the increased limits as set out in the 1996 protocol; and

   (b) the stay of the Gibraltar Proceedings shall continue, subject to the terms of paragraph 5 below

4. With regard to the arbitration procedure to be followed in the case of an election to arbitrate being made by either party, the parties expressly agree the following:

   (1) All and any disputes arising between the parties whatsoever and howsoever arising from or in connection with the Collision shall be referred to Mr Jeremy Russell Q.C. who shall act as sole arbitrator ("the Arbitrator").

   (2) Either party may commence arbitration proceedings at any time within the Election Period by first advising the other party in writing that they wish to refer the matter to arbitration before Mr Jeremy Russell Q.C. as sole arbitrator, and then by appointing in writing Mr Jeremy Russell Q.C. as the sole arbitrator and thereafter advising the other party that he has been so appointed, all such steps to be completed within the Election Period.

HFWLDN\4923895-3

(3) If Mr Jeremy Russell Q.C. is unable or unwilling to accept the appointment as sole arbitrator then the parties shall seek to agree an alternative sole arbitrator and, if such agreement cannot be reached within 14 days of the party seeking to appoint him advising the other party that the appointment has failed, then Mr. Lionel Persey QC shall be appointed as sole arbitrator and if he is unable or unwilling to accept the appointment as sole arbitrator, Mr. Timothy Brenton QC shall be appointed as sole arbitrator.

(4) Each party is to file a collision Statement Of Case ("SOC") within two months of the commencement of the arbitration proceedings as set out in paragraph 2(2) above. The SOC shall be served on the Arbitrator alone without serving a copy on the other party at that time.

(5) Within 14 days after the last SOC has been served on the Arbitrator the parties shall exchange simultaneously their respective SOC's.

(6) The SOC must be in the attached form Appendix I to this Agreement, be verified by a statement of truth and must contain: (a) in part I of the form, answers to the questions set out in that part; and (b) in part 2 of the form a statement of:

    (i) any other facts and matters on which the party serving the collision statement of case wishes to rely;
    (ii) all allegations of negligence or other fault which the party serving the collision statement of case claims, and
    (iii) the remedy which the parties serving the collision statement of case claims.

(7) There shall be no other pleadings served by the parties other than the SOC's and if any party wishes to amend its SOC it can only do so either with the agreement of the other party or, failing that, upon an order from the Arbitrator.

(8) The answer to the questions in the form at Appendix 1 shall have the status of formal admissions by the party filing the SOC

(9) If either party fails to serve its SOC within the time set out in (3) above, then the other party shall be entitled to apply to the Arbitrator for an award in default.

(10) Unless the parties agree otherwise, the matter shall be dealt with by way of an oral hearing before the Arbitrator.

(11) The Arbitrator shall set down the timetable for the conduct of the Arbitration following exchange of SOC's if the parties are unable to reach a binding agreement thereon.

(12) Two nautical assessors shall be appointed to assist the Arbitrator at the hearing. The assessors are be an elder brethren of Trinity House. Should no such assessors be available, suitably qualified nautical assessors shall be appointed and should the parties not agree on the identity of the such nautical assessors then the Arbitrator shall have the power to appoint such nautical assessors.

(13) Either party wishing to adduce expert evidence must apply to the Arbitrator for leave to adduce such expert evidence.

(14) Each party shall have the full right to be legally represented in the arbitration proceedings, including the right to use Counsel.

HFWLDN 4923895-3

(15) Whilst the parties hereby agree that they shall request the Arbitrator to issue a reasoned award, both parties expressly agree that they hereby waive and dispense with the right to appeal any award issued by the Arbitrator as per section 69 of the Arbitration Act 1996.

5. If an arbitration award under this Agreement is issued or the parties conclude a settlement agreement, then at such time the Gibraltar Proceedings, unless limitation proceedings are pending or taking place, shall be withdrawn with each of the parties bearing their own costs following from the Gibraltar Proceedings.

6. Without any admission by either party that the other is entitled to limit his liability, the parties hereby agree that the 1976 Limitation Convention shall apply without the 1996 protocol. Applying the relevant tonnage of each vessel would result in the following limits under the 1976 Limitation Convention as follows:

   NF - 4,563,108 SDRs

   TG - 5,100,750 SDRs

   Without derogation to paragraphs 2 and 3 above (that any claim that either party has or may have against the other whatsoever and howsoever arising from or in connection with the Collision may be referred to arbitration in London and in such case will be determined in accordance with English law and practice) the parties are free to constitute a limitation fund before any competent court and/or plead limitation as a defence as they consider appropriate and nothing in this agreement shall affect the limitation proceedings, or the right of the Owners of NF to commence a Limitation Action, referred to in Recitals E and F. Any claim that NF has or may have against TG whatsoever and howsoever arising from or in connection with the Collision shall be filed with and take part in the TG Limitation Fund together with any other claimants in the TG Limitation Fund. Without prejudice to the right to plead limitation as a defence to any claim brought by TG, any claim that TG has or may have against NF whatsoever and howsoever arising from or in connection with the collision shall be subject to/take part in the NF Limitation.

7. The parties hereby agree that within 14 days of signing this Agreement they shall provide to the other security on the wording set out in Appendix 2 to this Agreement. The security provided by TG shall be given by TrygVesta (from their head office). The security provided by NF shall be provided by the Swedish Club (from their head office).

8. It is hereby agreed that this agreement shall be governed by and interpreted in accordance with English law and any disputes arising under this agreement shall be subject to English law and shall be referred to the exclusive jurisdiction of the Supreme Court of England and Wales in London to the exclusion of any other jurisdiction, venue or forum.

Signed

For & on behalf of
A/S DAMPSKIBSSELSKABET TORM    *Holman Fenwick & Willan*
                                AS AGENTS ONLY

For & on behalf of
GLADIATOR NAVIGATION S.A.      *Hill Dickinson*
                                As Agents only

Dated: 8th February 2008

HFWLDN\4923895-3

APPENDIX 1

# Collision statement of case

| In the | High Court of Justice<br>Queen's Bench Division<br>Admiralty Court |
|---|---|
| Claim No. | |

Claimant(s)

Defendant(s)

Collision statement of case on behalf of ..................................................

PART 1

1. The names of the ships which came into collision and their ports of registry

2. The length, breadth, gross tonnage, horsepower and draught at the material time of the ship and the nature and tonnage of any cargo carried by the ship

3. The date and time (including the time zone) of the collision

4. The place of the collision

5. The direction and force of the wind

6. The state of the weather

7. The state, direction and force of the tidal or other current

8. The position, the course steered and speed through the water of the ship when the other ship was first seen or immediately before any measures were taken with reference to her presence, whichever was the earlier

ADM3 Collision statement of case (March 2002)                              Crown Copyright. Reproduced by Sweet & Maxwell Ltd

9. The lights or shapes (if any) carried by the ship

10. (a) The distance and bearing of the other ship if and when her echo was first observed by radar

    (b) The distance, bearing and approximate heading of the other ship when first seen

11. What light or shape or combination of lights or shapes (if any) of the other ship was first seen

12. What other lights or shapes or combinations of lights or shapes (if any) of the other ship were subsequently seen before the collision, and when

13. What alterations (if any) were made to the course and speed of the ship after the earlier of the two times referred to in article 8 up to the time of collision, and when, and what measures (if any) other than alterations of course or speed, were taken to avoid the collision, and when

14. The heading of the ship, the parts of each ship which first came into contact and the approximate angle between the two ships at the moment of contact

15. What sound signals (if any) were given, and when

16. What sound signals (if any) were heard from the other ship, and when

**PART 2**

State:

(1) that the information in Part 1 is incorporated in Part 2;

(2) any other facts and matters upon which the party filing this collision statement of case relies;

(3) all allegations of negligence or other fault on which the party filing this collision statement of case relies;

(4) the relief or remedy which the party filing this collision statement of case claims.

## Statement of Truth

*(I believes)(The Claimant believes)(The defendant believes) that the facts stated in this collision statement of case are true
*I am duly authorised by the (claimant) (defendant) to sign this statement

Full name..........................................

Name of claimant's/defendant's solicitor's firm.................................................

signed..........................................        position or office held..........................................
  *(Claimant)(Defendant) (solicitor)            (if signing on behalf of firm or company)

*delete as appropriate

## COLLISION SECURITY UNDERTAKING

**"NEW FLAME" - Collision with "TORM GERTRUD",
12th August 2007 (the "Collision")**

To Owners of the ["NEW FLAME" ("NF OWNERS") / "TORM GERTRUD" ("TG OWNERS")] – *delete as applicable*)

c/o Messrs [Hill Dickinson International / Kromann Reumert] – *delete as applicable*)

In consideration of you releasing and / or refraining from arresting or re-arresting or otherwise detaining the [M/V 'NEW FLAME" / "TORM GERTRUD"] *delete as applicable*) or any other vessel or property or tangible or intangible asset in the same or associated ownership / management / possession or control for the purposes of obtaining security in respect of your claim arising out of the Collision we hereby undertake to pay you on demand such sums as may be due to you from the [NF Owners / TG Owners] *delete as applicable*) either pursuant to a signed written agreement between the parties or by a final unappealable arbitration award or by a final unappealable judgment of the Gibraltar Courts provided that in any event our liability, inclusive of interest and costs, shall not exceed the sum of [figures and words]. This undertaking shall be governed by English law and all and any disputes arising hereunder shall be submitted to the exclusive jurisdiction of the English Courts.

We are informed by [NF Owners / TG Owners] *delete as applicable*) that ["NEW FLAME" / "TORM GERTRUD"] *delete as applicable*) was not bareboat chartered at the time of the Collision.

Should a 1976 limitation fund be constituted by or on behalf of the owners of ["NEW FLAME" / "TORM GERTRUD"] *delete as applicable*) then this guarantee shall be replaced with a guarantee only for legal costs in respect of collision action on the basis of the wording above for the sum of US $500,000/Euros500,000 inclusive of interest on legal costs . Upon the issue of such a replacement guarantee for legal costs, then this guarantee shall then be considered as null and void.

Signed    .........................................

Dated this ................................... day of February 2008.